# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | **Case No. 2:19-cr-00174** |
| **Plaintiff,** : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | |
| **MICHAEL T. SUTHERIN,** : | |
| : | |
| : | |
| **Defendant.** : | |

## **OPINION & ORDER**

### **I. INTRODUCTION**

On April 17, 2020, Defendant Michael T. Sutherin filed an Emergency Motion for Pre-Sentence Release pursuant to 18 U.S.C. § 3145(c) due to the COVID-19 pandemic. Doc. 47. The Government has opposed Defendant's Motion. For the reasons set forth below, the Court **DENIES** Defendant's Motion [#47].

### **II. BACKGROUND**

Defendant is a male in his early twenties who was charged via Indictment with thirteen criminal counts that included Sexual Exploitation of a Minor, 18 U.S.C. §§ 2251(a) & (c); Making a Notice for Child Pornography, 18 U.S.C. §§ 2251(d)(1)(B) & (e); Coercion or Enticement of a Minor, 18 U.S.C. § 2422(b); Receipt of Child Pornography, 18 U.S.C. §§ 2252(a)(2) & (b)(1); Distribution of Child Pornography, 18 U.S.C. §§ 2252(a)(2) & (b)(1); and Possession of Child Pornography, 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2). *See* Doc. 16. On May 9, 2019, Defendant appeared before Magistrate Judge Vascura for a detention hearing, after which he was detained pending trial, despite Pretrial Services recommending that he be released on his own recognizance.

1

*See* Doc. 7.  Magistrate Judge Vascura found that Defendant failed to produce sufficient evidence to rebut the statutory presumption under 18 U.S.C. § 3142(e)(3) that no condition or combination of conditions of release would reasonably assure his appearance and the safety of the community. *See id.*  Since then, Defendant has entered into a Rule 11(c)(1)(C) Plea Agreement, whereby Defendant stipulated to a sentence of 144 months in prison.  Doc. 37.

Defendant has now filed an Emergency Motion for Release pursuant to 18 U.S.C. § 3145(c) due to the COVID-19 pandemic.  Defendant does not suggest that he has any pre-existing physical health conditions that make him particularly vulnerable to the COVID-19 virus.  Instead, Defendant contends that, because of his Autism Spectrum Disorder (ASD), the stress and upheaval of an outbreak would be unusually severe for him should the Delaware County Jail experience an outbreak.  The Government opposes Defendant's release.

### III. LAW AND ANALYSIS

18 U.S.C. § 3145(c) provides that a person subject to detention who meets the conditions of release set forth in section 3143(a)(1) "may be ordered released, under appropriate conditions . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  It follows that a motion for release pursuant § 3145(c) requires the Court to undertake a two-step inquiry.  First, the Court must analyze whether the Defendant meets the conditions of release set forth in 18 U.S.C. § 3143(a)(1).  Second, the Court must decide whether exceptional circumstances justify release.

**A. Whether Defendant Satisfies the Conditions of Release Set Forth in § 3143(a)(1)**

18 U.S.C. § 3143(a)(1) provides that the Court "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to

2

flee or pose a danger to the safety of any other person or the community.  Only the latter concern is at issue in this case.

Defendant spends the bulk of his 51-page Motion attempting to demonstrate how his ASD diagnosis -- which affects how he interacts with others, communicates, and learns -- explains the root of his criminal conduct and shows that he poses no danger to the community moving forward. Defendant's expert, Dr. AJ McConnell, sheds some light on how Defendant's actions could be attributed to his ASD:

> Michael has substantial deficits in his social communication.  He has struggled with communication and understanding the social nuances of everyday life, ranging from his interactions with others at school, work, and in the community.  Simultaneously, he has struggled in developing, maintaining, and understanding interpersonal relationships, both in person and online. . . . It is likely that Michael continued to have difficulty understanding the context and consequences of engaging in highly sexualized online communication that is associated with his current legal charges.
>
> Similar to other individuals with and without an Autism Spectrum Disorder, Michael is interested in computers and video games.  However, unlike those without a neurodevelopmental disability, individuals with an Autism Spectrum Disorder are still vulnerable when using technology, including social media, as they still lack social understanding. Given his lack of social- and sexual knowledge in some critical areas, Michael was vulnerable to engaging in illegal activity by accessing child pornography without fully understanding how this was wrong or appreciating the abuse and harm to the children depicted or with whom he communicated. Unfortunately, this is becoming a severe problem for this population due to their lack of social understanding, the ease of access to material on the internet, and an internet environment in which others are seeking sexual experiences but in which many young men with ASD try to participate but they simply lack the social judgment to understand the bounds of appropriateness as they become chronologically older than persons they feel are their peers.  Michael now understands that his actions are wrong. Appropriate treatment can assist him in obtaining further education on appropriate sexual behavior and boundaries.

Doc. 47 at 14.  Defendant suggests that he has been unable to identify a single case where "a person with ASD, who was actually diagnosed at the time of his arrest, and received appropriate therapy, was ever charged again." *Id.* at 24.  While acknowledging that there is no official data to support

his claim, Defendant maintains that this "phenomenon of 0% recidivism" derives from the fact that individuals like himself are typically not deviant. *Id.* Defendant, therefore, argues that with proper treatment, he poses no risk of reoffending. He also notes that his parents would supervise him closely and that he would comply with all conditions of release.

The Government paints a much different picture than Defendant, maintaining that he was fully aware of the wrongfulness of his actions. The Government asserts that when initially interviewed by law enforcement, Defendant made comments indicating that he knew law enforcement was at his residence because of his conversations with young children and that he had been trying to find ways to stop himself from engaging in such conduct. *See* Doc. at 7. The Government thus argues that Defendant engaged in these acts because he was sexually interested in pre-teen and young teenage girls and that there is no reason to believe that such actions would cease if he were released from custody. *See Id.* at 8.

Additionally, the Government objects to the notion that his parents would closely supervise him, given that he would be returning to the same home where he was afforded the latitude to "engage in countless online communications with underage girls seeking images of illicit sexual conduct, and countless online communications where he sought child pornography from other online users." *Id.* Moreover, the Government is concerned that this is "the same home where the [D]efendant lived when he sexually abused Jane Doe, a minor child to whom he would likely continue to have regular access." *Id.*[1]

---

[1] Defendant was not charged for these alleged actions.

After considering the arguments from both sides, the Court finds that Defendant has not shown by clear and convincing evidence that there are conditions of release that would reasonably assure the safety of the community. Defendant's actions were particularly heinous, as he targeted vulnerable, adolescent children. Moreover, even giving full deference to the assessment of Defendant's expert, Dr. McConnell, the need for Defendant to receive appropriate treatment still remains. Whether Defendant could effectively receive this while confined at home, and with the state of Ohio virtually on lockdown, is uncertain at best. It would be irresponsible for the Court to release Defendant back into the community before completing his treatment.

Furthermore, the Court is concerned about the viability of restricting Defendant's access to the internet while at his parents' home. Indeed, this is the very same roof under which he committed all of the offenses at issue in this case, and the Court has no power to enforce any conditions of release upon Defendant's parents, such as removing all digital devices from their home. *See United States v. Brown*, 2008 WL 2098070, at *5 (S.D. Ohio May 16, 2008) ("[E]ven electronic monitoring and home detention do not adequately address Brown's ability to access phones or computers in his mother's home even if steps were taken to try to prevent those items from being present or available in the house. In this day and age, with devices such as cellular phones, Blackberries, and laptops, there are no conditions which can reasonably assure the safety of the community under the particular circumstances of this case if . . . Brown is released on bail."); *see also United States v. Sammons*, 2020 WL 613930, at *6 (S.D. Ohio Feb. 10, 2020) ("While Mr. Sammons insists that he would be without any internet access if he were released, there would be no real mechanism to enforce or police this, and the Court would need to rely on Mr. Sammons's promises to abstain. The Court is not willing to depend on Mr. Sammons's good faith, particularly given the concerning allegations present here."). For these reasons, the Court

**DENIES** Defendant's Emergency Motion for Pre-Sentence Release. *See United States v. Frost*. 2020 WL 1899561, at *6 (E.D. Mich. Apr. 17, 2020) ("The Court need not discuss whether COVID-19 constitutes an 'exceptional reason' in this case since Defendant cannot demonstrate that he would not pose a danger to the public if released.").

### B. Whether Exceptional Circumstances Justify Release

Although the Court need not reach the second prong of the § 3145(c) analysis, it is important to recognize the unprecedented magnitude of the COVID-19 pandemic, including its impact on detention decisions.

COVID-19 is a virus with no known effective treatment. This virus has precipitated a worldwide pandemic with the concomitant declaration of a national emergency by the federal government and a statewide shelter in place by the state of Ohio. With vaccines months (or more) away, health officials have urged the public to practice social distancing, avoid close contact with others, and to take appropriate hygiene measures -- practices that are difficult to implement inside detention facilities. In fact, two prisons in the state of Ohio, Marion Correctional Institution and Pickaway Correctional Institution, have made headlines recently, as nearly 80% of the inmates in these facilities have been diagnosed with COVID-19. Even more, it is estimated that about 30% of Ohio's COVID-19 caseload can be traced back to the prison system.[2]

Notwithstanding the above, officials at the Delaware County Jail, where Defendant is being held, have implemented a number of measures to reduce the spread of COVID-19 in their facility. For example, every person who enters the jail has his or her temperature taken, the jail is cleaned three times per day, and the jail has reduced its population from 220 inmates and detainees to 89.

---

[2] https://www.news5cleveland.com/news/continuing-coverage/coronavirus/nearly-80-of-inmates-have-covid-19-at-two-ohio-prisons

6

Doc. 48 at 11-12.  In addition, all new inmates are quarantined for 14 days upon arrival.  *Id.* at 12.  According to the Government, as of April 21, 2020, the Delaware County Jail has not had a single confirmed case of COVID-19 amongst its staff, detainees, or inmates.  *Id.* at 13.

In light of this information, the Court cannot conclude that the COVID-19 pandemic, in and of itself, justifies Defendant's release.  Moreover, Defendant does not suggest that he is at a higher risk of suffering from complications due to the virus.  To the contrary, Defendant is young and has no pre-existing physical health conditions.  That Defendant fears, among other things, being bullied, manipulated, exploited, and sexually abused by other inmates if a COVID-19 outbreak were to occur at the facility is not persuasive.  These are largely fears that would remain with or without the COVID-19 pandemic.  Hence, for the additional reason that exceptional circumstances do not justify release, the Court **DENIES** Defendant's Motion.

## V. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant's Emergency Motion for Pre-Sentence Release [#47].

**IT IS SO ORDERED.**

      /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: April 27, 2020**