# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | CASE No. 2:19-CR-174 |
| v. | : | |
| | : | |
| MICHAEL T. SUTHERIN | : | CHIEF JUDGE MARBLEY |
| | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through undersigned counsel, hereby submits its Sentencing Memorandum in response to the sentencing memorandum of the defendant, Michael T. Sutherin. The defendant is to be sentenced for his repeated sexually explicit online communications with numerous minor females, during which he sought out and received pornographic images of the minor girls. Despite the defendant's lengthy dissertation blaming his actions on his Autism Spectrum Disorder ("ASD"), nothing that he has presented to the Court can negate the harm his crimes have caused to numerous young girls, many of whom have serious mental health conditions that were exacerbated by their interactions with the defendant. Those acts more than warrant the 15-year term of incarceration to which the government graciously agreed, and the government requests that the Court accept the parties' agreement in that regard. Given the intensive need for ongoing supervision that the defendant's memorandum suggests is necessary, the government further recommends imposition of a 15-year term of supervised release. Finally, the government requests an amount of restitution consistent with the parties' agreement (should they come to one) or based upon a hearing to occur within 90 days of sentencing, as provided by 18 U.S.C. § 3664.

**BACKGROUND**

The defendant was initially arrested in this case in May of 2019, based on a criminal complaint that charged him with: making a notice or advertisement seeking child pornography (18 U.S.C. §§ 2251(d)(1)(B)); distribution, receipt, and possession of child pornography (18 U.S.C. §§ 2252(a)(2) & (b)(4)(B), 2252A(a)(2) & (a)(5)(B)); and coercion or enticement of a minor to engage in illegal sexual activity (18 U.S.C. § 2422(b)). The charges stemmed from an investigation implicating the defendant in using numerous online social media accounts to trade child pornography and to coerce minor females into sending him pictures and images of themselves engaged in sex acts. Shortly before his arrest, the defendant was interviewed by law enforcement and admitted much of the conduct underlying the above charges. He also admitted that he inappropriately touched a minor to whom he had regular access, hereinafter referred to as Jane Doe.

An indictment was returned by the grand jury on August 8, 2019, in which the defendant was charged with thirteen counts related to his online communications that were outlined in the criminal complaint. After the defendant's motion to continue the March trial date was denied and a *Lafler* hearing was scheduled for a few weeks prior to that trial date, the defendant signed a plea agreement on the date of the *Lafler* hearing. Pursuant to that plea agreement, on February 19, 2020, the defendant pled guilty to Counts Three and Nine (coercion and enticement, 18 U.S.C. § 2422(b)), and Counts Six and Eleven (receipt of child pornography, 18 U.S.C. § 2252(a)(2)).

The final Presentence Investigation Report (PSR) was disclosed on July 28, 2020, and the defendant filed a sentencing memo on October 20, 2020. Sentencing in this matter is scheduled for December 4, 2020.

**SENTENCING FRAMEWORK AND GUIDELINE CALCULATION**

After *Booker v. United States*, 543 U.S. 220 (2005), district courts are to engage in a three-step sentencing procedure. Courts are first to determine the applicable guidelines range, then consider whether a departure from that range is appropriate, and finally, consider the applicable guidelines range—along with all of the factors listed in 18 U.S.C. § 3553(a)—to determine what sentence to impose. *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007). The central command to district courts in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553(a).

Section 3553(a) further delineates seven factors the Court must consider in fashioning an appropriate sentence: (1) the nature and circumstances of the offense/history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges as set forth in the Sentencing Guidelines; (5) Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.

**ANALYSIS AND RECOMMENDATION OF THE UNITED STATES**

I.　*Guideline Calculation and Possible Departure*

As calculated in the PSR, the advisory sentencing guideline "range" for the defendant's offenses is life, based on a total offense level of 43 and a criminal history category I. The government submits that the Probation Officer's calculations are correct and thus raises no objections to the PSR.

However, during the course of the PSR process, the defendant raised several objections to the Probation Officer's calculations. The defendant's sentencing memorandum makes no

3

mention of these objections, and it is therefore unclear whether the objections remain unresolved.[1] To the extent they do, the government has addressed these objections at length with the Probation Officer and with opposing counsel during the PSR process, and it directs the Court's attention to the various PSR attachments for a detailed treatment of the issues the defendant has raised. (*See, e.g.*, Doc. # 54-1 through Doc. # 54-4.) For the reasons discussed in those attachments, which are briefly summarized below, the government believes that the guideline calculations contained in the PSR are correct.

- *Objection #1*. First, the defendant objects to the application of a two-level enhancement, pursuant to U.S.S.G. § 2G2.1(b)(6)(B), for the use of a computer to solicit sexually explicit images. The defendant does not deny that he utilized a computer in his communications with each of the victims in this case (and the countless others for which he was not charged) or that he received the pornographic images he requested via a computer or interactive computer service. This enhancement was thus properly applied.

- *Objection #2*. The defendant next objects to the grouping of his four counts of conviction into three separate count groups. Given the detailed nature of the defendant's objections, and the detailed nature of the government's response on this front, the government directs the Court to two places where the accuracy of the grouping methodology is analyzed at length: (1) its second response to the defendant's objections, a copy of which is attached to the PSR at Doc. # 54-4; and (2) the PSR, which grouped the offenses correctly.

- *Objection #3*. The defendant further objects to the inclusion in the PSR of the statements made to law enforcement during the course of the investigation. In particular, counsel for the defendant expresses discontent with his statements to law enforcement officers regarding his sexual abuse of a minor victim residing in his home and his parents' knowledge of that abuse. The PSR correctly summarizes the defendant's recorded statement to law enforcement. The defendant is unable to provide evidence to the contrary, and his arguments regarding how his words should be interpreted are properly made by the defendant at sentencing, not included in the PSR.

- *Objection #4*. The defendant next objects to the requirement that he pay the JVTA assessment of $5,000. But he already agreed to pay the JVTA. In paragraph 6(f) of the plea agreement, the defendant agreed to pay a minimum of $5,000 as a JVTA assessment.

---

[1] There were two rounds of objections during the course of the pre-sentence investigation process. In his initial objection letter, the defendant made some suggestion that he was objecting to certain restitution requests that the government received and shared with defense counsel and the probation officer, and which are summarized in the PSR. As the defendant did not raise this issue in his objections to the revised initial PSR (Doc. #54-3) or in his sentencing memorandum, the government presumes that he is no longer objecting to the imposition of restitution as part of his sentence.

- *Objection #5*.  The defendant objects to an upward departure, pursuant to U.S.S.G. § 2G2.2, Application Note #6(b)(ii), because he possessed child pornography videos that were over five minutes.  But he offers nothing to undercut the factual basis for that enhancement, which is made clear in the PSR—namely, that the defendant possessed multiple videos over 5 minutes long, including a child pornography video that was roughly 39 minutes long.

- *Objection #6*.  Finally, the defendant raised an objection to the information contained in the Offense Conduct as it pertains to conversations with users ANT and Younggirls, the number and content of images, and the impact the offense had on Jane Does #1 through #4.  Again, the defendant has not suggested that the information included in the presentence report is incorrect.  Moreover, the defendant's discontent with the victim-impact section of the PSR amounts to victim-blaming and minimizing the defendant's conduct.  The defendant is free to try to advance these arguments at sentencing with respect to the 3553(a) factors.  In the meantime, the factually accurate information regarding the nature of the defendant's conversations, and the nature of the impact on the victims, is of course properly included in the PSR.

II.  *Section 3553(a) Factors*

The government submits that the following § 3553(a) factors are of greatest significance in this case, and warrant the 15-year agreed upon term of incarceration followed by a 15-year term of supervised release.

A. Nature and Circumstances of the Offense

The nature and circumstances of this offense are deeply troubling.  The defendant's conduct indicates that he has a deeply-rooted sexual interest in minors and that he has repeatedly shown a willingness to act out on that interest.  He pursued that interest by knowingly trying to convince hundreds of underage girls to create and send him pornographic images of themselves.  He didn't stop there.  Beyond his online exploits with underage girls, he also cultivated, through online trading with others who shared his interest, an extensive collection of child sexual abuse imagery that depicted the depraved violation of young children.  Equally troubling, the defendant's pursuit of his sexual desires was not limited to the internet or the collection of pictures and videos.  Instead, as he admitted to law enforcement, he acted upon his urges in real life by abusing a minor female.

First, considering just the charged conduct, the defendant's illegal actions centered on his extensive conversations with underage social media users. He had a method: target underage girls on social media, engage them in conversation, steadily convince them to record or document themselves in compromising sexual images and videos, and then send those images and videos to the defendant. This wasn't just limited to isolated conversations here and there with 17-year-olds. This happened regularly, with hundreds of social media users who informed the defendant they were underage—some confirmed to be 14 years old or younger—throughout 2018 and 2019 at the very least. The defendant's exchanges with these underage kids were more than asking for naked pictures. The defendant developed relationships with them and assured them that he understood the mental and emotional issues that they faced—issues such as depression, suicidality, and prior sexual abuse amongst others. But inevitably, once he had convinced them that he cared about them, he flipped the script back to his real interest: convincing them to engage in sexualized chats leading to their production and distribution to him of their pornographic images. Even for those victims whose mental and emotional issues weren't made apparent to the defendant, he was the catalyst in their production and/or distribution of pornographic images, such as providing a financial incentive to one of the identified victims—an underage social media user referred to in the Indictment as Jane Doe #4—sending her a gift card in exchange for the nude photographs he sought.

In addition to taking advantage of minor victims over social media platforms, the defendant utilized these platforms to accumulate an extensive collection of child pornography through his trade of this material with other online users. His collection included more than 100 videos of gut-wrenching child sexual abuse just on his phone alone, some of which depicted young children engaged in in sexual intercourse with adult males or other children. This also

6

included roughly 1,000 images of child pornography—again, just on the defendant's cell phone alone.  These images depicted some of the vilest forms of child sexual abuse imaginable, such as pictures showing forced intercourse between an adult male and a toddler-aged girl.  The defendant's laptop contained an even more extensive collection of child sexual abuse imagery, some of which included videos showing young children being subjected to anal and vaginal intercourse with adult men.

      The communications that form the basis of the charges against the defendant show, all too clearly, that the defendant's accumulation of this massive collection and his interactions with young girls were not the result of his lack of social sophistication, seeking of acceptance by online friends, failure to understand the difference between legal pornography and child pornography, or an attraction to pubescent females who may happen to be under age 18.  There are more instances of these facts than those described above or those contained in the PSR.  For example, in one conversation with one of his online cohorts, the defendant indicated that his sexual interests were "Anal Incest" involving children "Like 10+".  These preferences were confirmed in a conversation with another user in which the defendant asked if the other user "got any anal?" and then went on to comment about a video that the user sent the defendant (depicting a girl who appeared to be eight to ten years of age nude and exposing her anus and vagina), saying that he believed the child depicted was 10 or 11 years old. Perhaps the clearest indication that the defendant's interest was solely in pre-pubescent or "tween" age girls was his Instagram conversation with a 21-year old woman.  In that conversation, the woman offered to do whatever the defendant wanted in terms of online sexual activity.  The defendant's response to this offer was to ask the woman if she knew "any other girls like you, but younger."  When the woman asked the defendant how young he wanted, his response was "more like 12."  The defendant's

7

conversations also confirm that he knew he shouldn't be engaging in sexual chats with minors. In April of 2019, he was confronted by a friend of one of the young girls with whom he had been "sexting," and he informed the friend that he was 21 years old. The friend's response was shock as she told the defendant that the girl he had been sexting was 14 years old. The defendant offered to stop the sexting, and the friend thanked him, explaining that it was "the age thing." When the conversation continued a few days later, the defendant claimed that he had, in fact, stopped sexting with the child, saying that he "had a mental slap and came to my senses." Coincidentally, this comment was reminiscent of what he told agents during their first interview of him about a month later: that he had slapped himself into reality in an attempt to stop his online behaviors. If the defendant did not understand the wrongfulness of his conduct, it is difficult to understand why he believed he needed to stop that conduct.

  The defendant's years-long, hands-on abuse of a minor victim further confirm that his sexual interest in minors is the motivating force for his charged conduct. Defendants in cases like these sometimes argue that merely possessing child pornography bears no connection to physically sexually abusing minors themselves. Whatever the merits of that argument are in the abstract, it is inapplicable here. The defendant not only had a trove of child pornography, and not only acted on his desires by coaxing minor victims into compromising conduct, he also acted on his sexual interest in children in real life. He admitted to law enforcement that he had sexually abused a minor victim over the course of several years. According to the defendant, this abuse included the defendant touching the minor's breasts, buttocks and vagina both on top of and beneath her clothes, and making her touch his penis. While his counsel now tries to claim that the defendant's words should not be interpreted to mean what they say, there is no lack of clarity in those words. He is a hands-on offender.

8

All of the foregoing refutes the crux of the argument put forth in the defendant's sentencing memorandum: that he really is not blame worthy for his criminal conduct. According to the approximately 75 pages of the defendant's sentencing memo, his actions are the result of his inability to understand social cues that would tell him his actions were wrong or illegal or to engage in "proper therapy earlier in life, and appropriate sexual education" that would have "explicitly told [him] the various implicit social rules … about the propriety of talking to underage girls online and exchanging images with them." (Doc. # 59, Defendant's Memo at 29.) Additional portions of his memo further cast blame on the minor girls – the victims in this case – for their online sexual activities. (*See id.* at 53.) As the defendant sees it, his conduct is not a sign of sexual deviance, but rather misunderstanding of social-sexual norms and the readily accessible nature of child pornographic materials and overly-sexualized teenage girls on the internet. As the foregoing summary of the defendant's offense conduct and history of hands-on sexual abuse shows, these arguments just do not square with reality.

B.  History and Characteristics of the Defendant

The defendant is a 20-something year old male with an ASD diagnosis. He is also an individual who has completed high school, attended college, held a job and learned to drive. He has had the benefit of specialized education and therapy for much of his life. He has a long history of being involved with pornography, leading his parents to take measures, such as changing passwords and hiding power cords, to prevent the defendant's access to online pornography. He continues to have the unwavering support of his parents and siblings.

As indicated above, the defendant and his attorneys would like this Court to believe that the only aspect of the defendant's history that is of importance is his ASD diagnosis. This characteristic is of utmost importance, they say, because it means that he cannot understand

normal social cues and didn't really know that what he was doing was *that* wrong. As the government has shown above, his own conduct and words shows the fallacy of these arguments.

The defendant successfully convinced hundreds of underage girls to engage with him in lewd conversations and to send him self-produced sexualized images and videos. How did he do all of this so prolifically and, as he saw it at the time, so successfully? He had a method for doing so. He knew whom to target, what to say, and when to say it. In other words, he knew, or figured out, how to read communications and people via the internet in order to get what he wanted. He understood social cues quite well enough to manipulate people to do what he wanted. The defendant's counsel argues that he didn't completely understand what he was doing. This evidence supports the opposite conclusion.

Similarly, he knew enough about the wrongful nature of his actions to attempt to prevent disclosure of those actions to his parents. The first time that agents arrived at his residence to see if the defendant would engage in a consensual interview, the defendant said that he knew he was being interviewed because of the chats he was engaging in with children. He also repeatedly asked—during both law enforcement interviews—if agents could tell his parents that they were there for regular porn, not child pornography. He similarly requested that agents not tell his parents about his admission that he sexually touched the minor victim. And towards the beginning of the second interview, the defendant asked agents if he was going to be taken to court. The defendant knew what he was doing was wrong and could get him in trouble. This makes sense in the context of the PSR. As the PSR notes in several places, the defendant's own parents had also told him to stop looking at pornography. Furthermore, as described above, at least one online user had also previously told the defendant that he needed to stop talking to minors in a sexual way.

Ignoring the import of the defendant's *own behavior*, the defendant's sentencing memorandum is devoted almost entirely to trying to educate the Court about the nature of ASD generally. The government need not respond to every aspect of that sentencing memorandum for the Court to know a few truths about this case.

First, whatever the status of the defendant's ASD, the defendant, as described above, was a functioning part of society. His interactions with the minor victims in this case indicate that he knew what he was doing, and that he was a savvy communicator online. Similarly, his interactions with law enforcement, already detailed in this memorandum and in the PSR, indicate that he knew what he was doing was wrong. In other words, the defendant cannot establish that any alleged disorder is responsible for his offense. And as a functioning member of society, he cannot float in and out of culpability in situations like this one.

Secondly, even if the defendant's ASD were somehow to blame, in part, for his conduct, this is not a helpful fact for the defendant. To the extent that the defendant has acted on sexual interests that he cannot control, or to a devotion to child pornography that he cannot keep in check, that places the public at greater risk. As the defendant's hands-on conduct with a minor victim demonstrated, the defendant has admitted that he knew he had deviant interests yet could not control them. This places all children who may come into contact with him at risk.

Finally, even crediting some of defense counsel's arguments here, the government has already accounted for them in the plea offer in this case. It considered the defendant's arguments and evidence for mitigation, as well as additional arguments and evaluation from defense-retained doctors. After all, the defendant's conduct, in the normal course, nets a guideline-recommended sentence of life in prison. The government agreed to a sentence of 15 years, which appropriately accounts for any mitigating aspects of the defendant's ASD.

C.  Statutory Purposes of Sentencing Pursuant to 18 U.S.C. § 3553(a)(2)

In fashioning a sentence that is "sufficient, but not greater than necessary," the Court is directed in 18 U.S.C. § 3553(a)(2) to consider the need for the sentence to:

> (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

These factors weigh in favor of the parties' agreed-upon sentence, as well as a 15-year term of supervised release.  The defendant is a dangerous sexual predator.  His conduct reveals that he is an extreme risk to minors given that he repeatedly made efforts, some successful, to coerce minors to record and send him illicit videos; that he had a large trove of child pornography, including content depicting toddlers; and that he is an admitted hands-on offender. The public needs protected from him, and the parties' sentence accomplishes that.

In addition, the defendant would benefit from participating in a lengthy program of sex offender counseling and treatment, and this would best be done within the confines of a Bureau of Prisons (BOP) facility. Each BOP institution has counseling resources available, and each region also has at least one designated sex offender management and treatment program. Imposing the prison term recommended by the government and probation would provide the defendant with just punishment, afford adequate deterrence to him and others, protect the public from his long-standing demonstrated sexual interest in children, and provide the defendant with necessary educational training, medical care, or other correctional treatment. The Bureau of Prisons is required to keep all inmates safe, and special safeguards are implemented to care for all sex offenders. The Bureau of Prisons also has special programming and other considerations that it follows for persons who truly have "special needs" or intellectual challenges.

12

      D.      <u>The Need to Provide Restitution</u>

The defendant has already agreed to pay restitution by virtue of his plea agreement. As the PSR indicates, there have been a number of victims identified, and the Probation Office has made a number of recommendations about the restitution owed to those victims. Those recommendations from the PSR amount to a total award of $57,340, divided as follows:

- $10,000 to Maureen, the victim identified in the Lighthouse1 child pornography series;
- Up to $3,000 to Jane Doe, the victim identified in the Vicky child pornography series;
- $10,000 to Chelsea, the victim identified in the 2crazygurls child pornography series;
- $3,000 to Erika, the victim identified in the PinkHeartSisters child pornography series;
- $3,000 to Jenny, the victim identified in the Jenny child pornography series;
- $5,000 to Pia, the victim identified in the SweetSugar child pornography series;
- $1,920 to Jane Doe #1;
- $3,420 to Jane Doe #3; and
- $15,000 to Jane Doe #5.

The government has reviewed and provided to the Probation Officer and defense counsel all of the materials supporting the above-summarized restitution requests. Based on those materials and review of the evidence pertinent to each victim, believes that the Probation Officer's recommendations are largely appropriate, but may need slight modifications as to the manner of division. The government therefore recommends the following course of action. In light of the defendant's agreement in paragraph 7a of the plea agreement to pay restitution, the government is hopeful that the parties can reach an agreement about an appropriate amount of restitution prior to the sentencing hearing in this case. If the parties cannot reach such an agreement, the government will at that time request that the Court schedule a separate restitution hearing within 90 days of the sentencing hearing, as provided by § 3664.

## **CONCLUSION**

For the reasons stated, the United States recommends the following sentence: a 15-year term of incarceration based upon the parties' agreed-upon sentence under Rule 11(c)(1)(C); a 15-year term of supervised release; and an amount of restitution consistent with the parties' agreement (should they come to one) or based upon a hearing to occur within 90 days of sentencing, as provided by § 3664.

                                            Respectfully submitted,

                                            DAVID M. DEVILLERS
                                            United States Attorney

                                            HEATHER A. HILL (IL 6291633)
                                            Assistant United States Attorney

                                            S. COURTER SHIMEALL (0090514)
                                            Assistant United States Attorney
                                            303 Marconi Boulevard, Suite 200
                                            Columbus, OH 43215
                                            Phone No.: (614) 469-5715
                                            Fax No.: (614) 469-5653
                                            Email: Heather.Hill@usdoj.gov
                                            Email: Courter.Shimeall@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was served this 10th day of November, 2020, electronically through the Court's online filing system, upon all counsel of record for the defendant, Michael Sutherin.

_____

HEATHER A. HILL (IL 6291633)
Assistant United States Attorney
